This suit results from an intersectional automobile collision which took place in New Orleans at the corner of Washington Avenue and Freret Street at about 8:50 o'clock on the morning of August 25th, 1939. Plaintiff, Ruckstuhl, was driving his Ford automobile on Washington Avenue towards the Mississippi River and the other vehicle, a truck owned by Joseph Bartholomew, was being driven down Freret Street by John Whitner, an employee of Bartholomew who, at the time, was acting within the scope of his employment. Just before the two vehicles met in the intersection, a streetcar of New Orleans Public Service, Inc., on its way up Freret Street, had crossed Washington Avenue and the truck of Bartholomew, going in the opposite direction, had passed between the said streetcar and the river side curb of Freret Street. Ruckstuhl's Ford struck the truck on its left side very near to the rear, and as a result Ruckstuhl sustained rather serious injuries.
At the time of the accident Ruckstuhl was acting within the scope of his authority and duties as president and general manager of Ruckstuhl and Fick, Inc., and accordingly the Maryland Casualty Company of Baltimore, compensation insurance carriers of the said corporation, paid to him compensation amounting to $240 and paid various drug and medicine and similar bills made necessary as a result of his injuries, amounting to $89.55, making a total paid by the said insurers of $329.55. Proceeding under the subrogation pro tanto to any rights which Ruckstuhl may have had, the said insurer has joined with Ruckstuhl as party plaintiff and seeks recovery of the amount so expended.
Ruckstuhl prays for judgment for $5,335.
The defendants are Joseph Bartholomew and his liability insurance carrier, Indemnity Insurance Company of North America.
Plaintiffs allege that the driver of the Bartholomew truck was responsible for the accident and have made four specific charges of negligence:
(1) That although there was a "stop" sign on Freret Street near the corner of Washington Avenue, the truck-driver, Whitner, failed to heed it and drove into the intersection without having first brought the truck to a stop;
(2) That Whitner failed to accord to Ruckstuhl the right of way to which it is alleged he was entitled in accordance with the provisions of City Traffic Ordinance #13702 C.C.S.;
(3) That the said Whitner was operating the truck at an excessive and dangerous rate of speed and also in violation of the said Traffic Ordinance; and
(4) That the said operator of the truck failed to keep a proper lookout and failed to observe the approaching Ruckstuhl car, and that in this regard also he violated the provisions of the said Traffic Ordinance.
Defendants deny that the truck-driver was at fault in any of the particulars set forth, and, in the alternative, aver that if there was any negligence on Whitner's part, the proximate cause of the accident was not that negligence but was the contributory negligence of Ruckstuhl, himself, in entering the intersection without having first brought his automobile to a stop, as it is alleged he was required to do by the said Traffic Ordinance; that he was also contributorily negligent in that he entered the intersection without keeping a proper lookout and when his view up Freret Street was obstructed by the streetcar. It is asserted that his contributory negligence consisted also in operating the car "at a speed which, under the circumstances prevailing at the time the accident occurred, made it impossible for plaintiff to maintain the proper control of said car", and Ruckstuhl is also charged with having failed to accord to the driver of the truck the right of way to which it is asserted he was entitled.
It is also averred on behalf of defendants that the Bartholomew truck had entered and preempted the intersection before Ruckstuhl's car reached it.
There was judgment dismissing plaintiffs' suit and they have appealed. As Whitner, driving the truck, approached Washington Avenue there was a traffic "stop" sign which faced him and which required that he bring his truck to a stop before entering the intersection. This he says that he did do and *Page 196 
he says also that he cannot be mistaken because he remembers well that while his truck was stopped he alighted to adjust a part of it, and in doing so left open the left door of the cab of the truck. He adds that this door partially obstructed the passage of the approaching street car so that the motorman "rang for me to close the door". The motorman was not produced as a witness, but the conductor of the streetcar contradicts Whitner and states that not only did the truck not stop but that, when it passed the streetcar, it was going at a speed of "about 20 to 25 miles."
We are not at all certain that the conductor actually saw the truck when it was at the point at which it should have been stopped because at that time the car was either stopped on the lower side of Washington Avenue because of a "stop" sign located on that corner, or had just started forward again, and the conductor was on the rear end of the car, quite a distance away, and his view was to some extent obstructed by the passengers in the car and by the doors, windows and framework of the car itself.
Another witness for plaintiffs, Merdis Warren, who states that the truck did not stop, obviously saw nothing and knew nothing.
Ruckstuhl did not stop before entering the intersection. He says that he had been driving at about 20 miles per hour, and that he saw the street car cross Washington Avenue when he was a short distance away and reduced his speed to about 15 miles per hour, and that just as the street car had cleared Washington Avenue he increased his speed slightly.
Defendants contend that in failing to stop, Ruckstuhl violated the requirements of the Traffic Ordinance which, in part, reads as follows:
"Section 2. (a) Every operator of any streetcar or bus, either gas or electric, used to carry passengers or school children, or any self-propelled or any other vehicle or pedestrian traveling on any street intersecting any other street, on which streetcars or trains are routed by any Ordinance of this City, shall come to a full stop where the street on which they are traveling meets the prolongation of the nearest property line of such other street they are about to enter or cross, and shall listen and look for approaching streetcars and trains before crossing or turning into said street, subject, however, to the direction of any traffic control sign or signal or any police officer at such intersection."
Plaintiffs in answer to this contention seek to meet it by two counter-arguments:
(1) That at the corner there was a traffic control sign which required the truck to stop and that therefore under the very provisions relied on by defendants that section had no application; and
(2) That that provision was not intended as a protection against a collision between two automobiles but was merely intended to require automobiles or other vehicles to stop before crossing said tracks in order that there might be no danger of a collision with a streetcar or a train on the tracks.
Ruckstuhl's statement concerning the distance back of the streetcar at which he was crossing Freret Street is that: "the streetcar had just about cleared the upper part of Washington Avenue when I put my foot on the accelerator and started to cross behind the streetcar."
Obviously he means that he was just beginning to increase his speed from 15 miles per hour and that he was passing rather close behind the streetcar. It is clear that the car would have obstructed his view of any vehicle which might have been on its way down Freret Street, as the Bartholomew truck was, and that when he drove into the intersection he was either so close behind the car that he could not see what might be approaching on the other side and was therefore negligent, or, if not, then, he was far enough away to see such other approaching vehicle and he ought not to have crashed into it. He estimated the speed of the truck at about 18 miles per hour and that was just about the speed of his own car. Yet he struck the truck on the left side and very near to its rear. It must have been either in the intersection when he entered or so near that he would not have crashed into it had he himself been careful. Whether the ordinance required him to stop or not, he was negligent in proceeding as he did without noticing that the other vehicle had entered, or was just about to enter, the intersection. It may be that the Bartholomew truck did not stop at the "stop" sign and that its driver was thus guilty, technically, of negligence, but we think that the negligence of Ruckstuhl himself was at least a contributing factor, and that had he been at all careful before entering the intersection the accident would not have occurred.
It is not necessary that we reach a definite conclusion as to whether or not Whitner *Page 197 
stopped at the stop sign, nor is it necessary that we reach the conclusion that the Traffic Ordinance required Ruckstuhl to stop. Regardless of the ordinance, his negligence in driving into the intersection under the circumstances was itself negligence which prevents his recovery. Certainly the findings of the trial court were not manifestly erroneous.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.
WESTERFIELD, J., takes no part.